**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**PAMELA CARVEL,**

                          **Plaintiff,**          08 Civ. 8938 (JGK)

            **- against -**                **MEMORANDUM OPINION AND**
                                          **ORDER**
**FRANCHISE STORES REALTY CORP., ET**
**AL.,**

                          **Defendants.**
————————————————————————

**JOHN G. KOELTL, District Judge:**

        The plaintiff's central allegation in this lawsuit is that

Franchise Stores Realty Corp., along with several unknown

employee defendants, (collectively, "the defendants") have

failed to pay rent pursuant to a lease that the plaintiff

alleges was assigned in 1994 by Agnes Carvel to an entity called

Realities.  Realities, once a plaintiff in this case, was

deleted from the Amended Complaint.  The pro se plaintiff Pamela

Carvel ("the plaintiff"), the niece by marriage of the deceased

Agnes Carvel, alleges that Agnes Carvel assigned the lease to

Realities in 1994 and that Realities has assigned its cause of

action to the plaintiff.  The defendants have allegedly failed

to pay rent pursuant to the lease from 2000 to 2007.  The

plaintiff, no stranger to litigation regarding the estate of

Agnes Carvel, alleges a host of claims arising from this failure

to pay rent, including fraud, various tort claims, abuse of

process, various violations of civil rights laws, and RICO
claims.

The defendants respond that they are not required to pay
rent to the plaintiff because prior court proceedings have
determined that the property in question does not belong to the
plaintiff. The defendants move to dismiss the Amended Complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6) on the
grounds of res judicata and collateral estoppel.  Due to the
numerous lawsuits filed by the plaintiff in multiple courts, the
defendants further move for sanctions pursuant to Rule 11 of the
Federal Rules of Civil Procedure.

In response, the plaintiff moves to compel answers to
interrogatories, seeking to discover the names of the John Doe
defendants, and moves for partial summary judgment for payment
of rent plus interest pursuant to Federal Rule of Civil
Procedure 56.


**I.**


The following background facts are drawn from the
pleadings, affidavits, submissions on file, and other matters of
public record.  The history of this litigation is long and
complex.  For the sake of clarity, only the undisputed facts
pertinent to the pending motions are included here.

In 1988, spouses Thomas and Agnes Carvel entered into a Reciprocal Agreement and corresponding mirror image wills naming the Thomas and Agnes Carvel Foundation ("the Foundation") the ultimate beneficiary of their estates. (Defendants' Local Rule 56.1 Statement ("Defs.' 56.1 Stmt.") ¶ 38.) Once Thomas Carvel died in 1990, Agnes Carvel was precluded by the Reciprocal Agreement from altering her 1988 mirror image will or distributing the principal of her estate during her lifetime, but the Reciprocal Agreement did grant her the power to distribute the income from the estate. (Defs.' 56.1 Stmt. ¶¶ 39, 44.) Agnes assigned the lease of 95 S. Central Avenue, Hartsdale, New York to Realities in 1994. (Defs.' 56.1 Stmt. ¶ 40; Am. Compl ¶ 7; Carvel Reply Aff. Ex. A, Apr. 13, 2009.) The plaintiff alleges that Realities has assigned the cause of action to collect unpaid rent to the plaintiff.[1] (Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1 Stmt.") ¶ 58; Am. Compl. ¶ 1.) Agnes died in 1998. (Defs.' 56.1 Stmt. ¶ 44.)

The plaintiff vigorously disputes the validity and interpretation of the Reciprocal Agreement and the accompanying mirror image wills. (Pl.'s 56.1 Stmt. ¶¶ 38-39.) However, in

---

[1] The defendants raised questions with regard to the plaintiff's capacity to sue on behalf of Realities after the first complaint was filed. In the Amended Complaint, the plaintiff alleges that Realities has assigned its cause of action to the plaintiff. The Court must assume the truth of this claim on a motion to dismiss, but the plaintiff has not provided any evidence of the alleged assignment. On a motion for summary judgment, the plaintiff would be required to demonstrate some evidence of her capacity to sue for Realities' cause of action.

2002 the Surrogate's Court in Westchester County, New York held that the Reciprocal Agreement is valid and enforceable by the Foundation and determined that the assignment of the property to Realities in 1994 was a "gratuitous transfer in violation of the Agreement.  First, there was no consideration for these transfers.  Second, unlike the cash gifts of income routinely made by the Carvels, the 'sale' of the Realities Properties constituted a large transfer of Agnes' principal assets." In re Carvel Foundation, No. 3285/90, 2002 WL 32872391, at *9 (N.Y. Sur. Ct. Apr. 1, 2002).

The New York Surrogate's Court also cast some doubt on the accuracy of Pamela Carvel's representations about Realities by pointing out that it appeared only to have been created in 1995. See id. at *3.  But at another part of the opinion, the court concluded, for purposes of the statute of limitations, "the earliest date upon which a breach of the Agreement occurred was September 6, 1994, when Agnes transferred the Realities properties to the Realities' Trust.  Since this action was commenced within six years of these transfers, the Foundation's claims are timely." Id. at *6.

The plaintiff Pamela Carvel was a party to that earlier New York Surrogate's Court decision.  See id. at *1.  Realities was served and failed to appear, and the court noted its default.

4

See id. at *10.  Thus, both are bound by the result in that proceeding.  The Court decreed:

> Accordingly, the deeds from Realities and/or Realities DBT to Lartrym are voided, and Realities and/or Realities DBT and Lartrym are permanently enjoined from conveying and/or encumbering the four properties that are the subject of this proceeding.  Title to the properties is awarded to the Foundation for the reasons and subject to the conditions addressed hereafter.

Id.

There is a master lease on the property dated April 23, 1987 from Thomas and Agnes Carvel to Franchise Stores Realty Corp.  (Pl.'s 56.1 Stmt. Ex. A at 1-7.)  The plaintiff alleges that this lease was assigned to Realities in 1994, and therefore Realities should receive the rent from the property, and the plaintiff is the assignee of Realities' cause of action. (Carvel Reply Aff. Ex. A, Apr. 13, 2009; Am. Compl. ¶ 7.)  The plaintiff's claims in this suit are all rooted in the alleged failure of the defendants to pay rent.  In the course of the complaint, the plaintiff alleges that the decision of the Surrogate was itself fraudulent and corrupt.  (Am. Compl. ¶¶ 76, 80.)

In addition to the New York Surrogate's Court suit, the plaintiff Pamela Carvel is a party to other litigation over the estate of Agnes Carvel.  There have been numerous lawsuits regarding the estate and related matters.  Most particularly,

Pamela Carvel brought a lawsuit in the United States District Court for the District of Delaware alleging that Carvel Corp. was required to pay lease payments on the same property involved in this case to the Estate of Agnes Carvel.  (McClary Aff. Ex. B, Feb. 20, 2009.)  In that case Pamela Carvel sued as the Executrix of the Estate of Agnes Carvel, alleging that the Estate was entitled to the rent.  (McClary Aff. Ex. B at 1, Feb. 20, 2009.)

A court in England found that Pamela Carvel could not represent the estate because she is in a position of "irreconcilable conflict" with the estate beneficiary; that she was either dishonest, deliberately disregarded her duties, or does not understand her responsibilities and is unwilling to learn them; and that she had previously attempted to obtain enforcement of prior orders in different courts without disclosing the existence of restraining orders preventing such enforcement.  See Thomas and Agnes Carvel Found. v. Pamela Carvel, [2007] E.W.H.C. 1314 ¶¶ 16-17, 51 & 54-55 (Ch.).  The plaintiff then immediately dropped the lawsuit in Delaware and brought the action in this Court claiming that Realities is entitled to the rent.  (McClary Aff. Ex. D, Feb. 20, 2009.) When it was pointed out that she could not represent Realities, she brought the Amended Complaint alleging that Realities had

assigned the lawsuit to her.   (Compare Compl., with Am. Compl. ¶ 27.)

The defendants now move to dismiss the complaint pursuant to Rule 12(b)(6), primarily on the grounds of collateral estoppel and res judicata.  The plaintiff moves for partial summary judgment in accordance with Rule 56 for the collection of rent and interest, and also moves to compel responses to interrogatories seeking the identity of the individual employee John Doe defendants who may have participated in the alleged failure to pay rent.  The defendants, in response, move for Rule 11 sanctions against the plaintiff, Pamela Carvel.


                                II.


The defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on multiple grounds.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, No. 06 Civ. 5936, 2007 WL 4267190, at *4-5 (S.D.N.Y. Dec. 3, 2007).  The Court's function on a motion to dismiss is "not

to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly v. Bell Atlantic Corp., 550 U.S. 544, 570 (2007); see also Tsering v. Wong, No. 08 Civ. 5633, 2008 WL 4525471, at *1 (S.D.N.Y. Oct. 3, 2008).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Kavowras v. New York Times Co., 328 F.3d 50, 57 (2d Cir. 2003); Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 775 (2d Cir. 2002); Cortec Indus., Inc., v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Tsering, 2008 WL 4525471, at *2.

The pleadings and allegations of a pro se plaintiff must be construed liberally for the purposes of Rule 12(b)(6). See McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); Weixel v. Bd. of Educ. Of City of New York, 287 F.3d

138, 145-46 (2d Cir. 2002).  Additionally, the submissions of a
pro se litigant should be interpreted to "raise the strongest
arguments that they suggest."  Pabon v. Wright, 459 F.3d 241,
248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790
(2d Cir. 1994)); see also Tsering, 2008 WL 4525471, at *2.


                              **A.**


     The defendants' primary argument for dismissal is that the
lawsuit is barred by res judicata and collateral estoppel
because the New York Surrogate's Court has already ruled that
the Reciprocal Agreement is enforceable by the Foundation, and
that any transfer of the property from Agnes Carvel to Realities
after the death of her husband was in violation of the
Agreement.  See In re Carvel Foundation, 2002 WL 32872391, at
*9.  Therefore, according to the defendants, the property in
question belongs to the Foundation and neither Realities nor
Pamela Carvel on its behalf can collect rent pursuant to the
lease.

     A federal court looks to New York law to determine the res
judicata or collateral estoppel effect to afford a decision of a
New York court.  See Giannone v. York Tape & Label, Inc., 584
F.3d 191, 192-93 (2d Cir. 2008) ("when determining the effect of
a state court judgment, federal courts, including those sitting

in diversity, are required to apply the preclusion law of the rendering state") (quotation marks and alterations omitted).

The doctrine of res judicata requires a party to show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (quotation marks and alterations omitted).  The party claiming res judicata bears the burden of proving that the second action is barred, and it is not "dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues."  Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997).

A federal court is collaterally estopped from deciding an issue under New York law if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." McKithen, 481 F.3d at 105 (quotation marks omitted).  The burden of proving the "identical issue was previously decided" is on the party claiming preclusion, and it must be "quite clear" that the requirements of collateral estoppel have been met.  Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995).

It is not quite clear that the defendants in this case have proved that the New York Surrogate's Court decision bars the plaintiff's claim that Agnes Carvel assigned the lease income to Realities in 1994.  The Surrogate's Court plainly determined that the Reciprocal Agreement was enforceable after Thomas Carvel's death, that the property should go to the Foundation, and that there was no right to encumber the property, and that would plainly include putting a lease on it.  See In re Carvel Foundation, 2002 WL 32872391, at *9.  But the issue in this case involves a lease that the plaintiff alleges existed in 1987, prior to the 1988 Reciprocal Agreement and related mirror image wills and prior to Thomas Carvel's death in 1990.  It is not clear that the Surrogate's Court opinion specifically dealt with the issue of whether the lease had been assigned, or whether that assignment was in violation of the Reciprocal Agreement. While the logic of the opinion would appear to suggest that the assignment of the lease would be impermissible, there is at least an argument that the lease only assigned income and not principal, and that Agnes Carvel had the right to assign income. But Agnes Carvel only had the right to assign income during her lifetime and she died in 1994.  The opinion is silent on the issue of whether she assigned the existing lease, or the income

on the lease, to Realities prior to her death, and whether this would have been permissible.[2]

The defendants also point to the fact that the Surrogate found that Realities only came into existence in 1995. See id. at *3. But this is an overstatement. The Surrogate's Court opinion also states, for purposes of the statute of limitations, that the transfer of the properties occurred at the earliest in September 1994, which appears to accept the existence of Realities in September 1994. See id. at *6.

The defendants also claim that this lawsuit is an attempt to reverse the decision of the Surrogate's Court, and that is impermissible under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars a federal district court from reviewing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005). There are certainly numerous allegations in the Amended Complaint that berate the decision of the Surrogate and this Court does lack

---

[2] The contents of the Reciprocal Agreement are not before this Court because the Reciprocal Agreement has not been presented to this Court. The Surrogate's Court has decided that the Foundation is entitled to enforce the Reciprocal Agreement, although it did not clearly decide the specific issues regarding the lease. These issues could potentially be resolved by this Court on summary judgment if the Reciprocal Agreement were provided to the Court. It is also possible that this issue should be decided by the Surrogate's Court.

jurisdiction to reverse a decision of the Surrogate.  But it is
not clear that a decision in this action would reverse a
decision of the Surrogate.

**B.**

However, on the merits, most of the claims in the Amended
Complaint should be dismissed.  At bottom, the action claims
that there was a breach of contract and fraud in the defendants'
failure to pay rent to Realities from 2000 to 2007.  The fraud
actions and the breach of contract claims for unpaid rent prior
to October 17, 2002 are time-barred.

The New York statute of limitations on a claim of fraud is
"the greater of six years from the date the cause of action
accrued or two years from the time the plaintiff . . .
discovered the fraud, or could with reasonable diligence have
discovered it."  N.Y. C.P.L.R. § 213(8).  A cause of action for
fraud accrues when the "plaintiff suffers a loss as a result of
the defendant[s'] fraudulent act."  Cruden v. Bank of New York,
957 F.2d 961, 974 (2d Cir. 1992).

The fraud claim first accrued in 2000 because Realities
suffered a loss the first month the rent was allegedly not paid.
A reasonably diligent person would have discovered that they
were not receiving rents due very shortly after the time the

13

tenant ceased paying the rent, and therefore the two year
discovery period similarly began in 2000.  Thus, the fraud claim
is barred six years after the claim first accrued, namely six
years after 2000.  The present action was filed on October 17,
2008, well after the statute of limitations expired in 2006.
Therefore, the fraud claims are dismissed as time-barred.

In New York, the statute of limitations on a breach of
contract claim is six years.  N.Y. C.P.L.R. § 213(2).  The
limitations period begins to run and the cause of action accrues
upon breach.  See Guilbert v. Gardner, 480 F.3d 140, 149 (2d
Cir. 2007).  However, "where a lease requires the payment of
rent in installments the statute of limitations begins anew with
each separate installment."  J.C. Penney Corp. v. Carousel Ctr.
Co., 635 F. Supp. 2d 126, 131 (N.D.N.Y. 2008).  New York courts
have applied the rule that the non-payment of each installment
restarts the statute of limitations.  See id. (collecting
cases); see also 833 N. Corp. v. Tashlik & Assocs, P.C., 670
N.Y.S.2d 327, 327 (App. Div. 1998) (claims for rent unpaid prior
to six years before filing of suit barred by statute of
limitations, but claims for rent due within six years of filing
not time-barred).

In this case, the alleged non-payment of rent began in 2000
and continued until 2007.  The case was filed on October 17,
2008.  The statute of limitations bars any breach of contract

14

claim on the allegedly unpaid rent due prior to October 17, 2002.  However, the due date of each alleged rent installment began the statute of limitations again.  Therefore, the breach of contract claims for allegedly unpaid rent due after October 17, 2002 are not time-barred and cannot be dismissed.

### C.

The remaining claims in the Amended Complaint are plainly without merit and should be dismissed.

### i.

In addition to the time-barred state fraud claims, count 1 of the Amended Complaint alleges violations of fraud provisions of the Uniform Commercial Code and the Uniform Fraudulent Transfer Act.  The only leases covered by the New York Uniform Commercial Code are leases of goods.  See Direct Capital Corp. v. New ABI Inc., 822 N.Y.S.2d 684, 694 (Sup. Ct. 2006) (Article 2A of New York's Uniform Commercial Code covers leases of goods, as opposed to sales of goods).

The New York Uniform Fraudulent Conveyance Act has a six year statute of limitations, starting at the time of the allegedly fraudulent conveyance.  See N.Y. C.P.L.R. § 213(8); In

re Corcoran, 246 B.R. 152, 158 n.4 (E.D.N.Y. 2000).  It is not
clear exactly which conveyance the plaintiff is alleging was
fraudulent, but it must have occurred prior to or on the date
the defendants allegedly stopped paying rent in 2000.
Therefore, any claims under the Uniform Fraudulent Conveyance
Act are time-barred.  Count 1 of the Amended Complaint should be
dismissed.


                              ii.


     Counts 2 and 3 of the Amended Complaint allege conspiracy
to induce a breach of contract, tortious interference with a
contract, and tortious interference with the plaintiff's
business expectancy.  Under New York law, claims for both
tortious interference with a contract and for tortious
interference with a business expectancy require that the
contract or business relationship exist between the plaintiff
and some third party other than the defendants.  See Berwick v.
New World Network Int'l, Ltd., No. 06 Civ. 2641, 2007 WL 949767,
at *14 & n.11 (S.D.N.Y. Mar. 28, 2007) (claim for tortious
interference with prospective contractual relations, which is
the same as a claim for tortious interference with prospective
business relations, requires the plaintiff to show "(1) that
they had a business relationship with a third party; (2) that

                               16

the defendants knew of that relationship and intentionally interfered with it; (3) that the defendants either acted solely out of malice or used wrongful means; and (4) that the defendants' interference caused injury to the relationship with the third party"); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 147 (S.D.N.Y. 2003) (plaintiffs in tortious interference with contract claim must prove that "(1) a contract existed between the plaintiffs and a third party, (2) the defendants knew about the contract; (3) the defendants intentionally induced the third party to breach the contract or rendered performance impossible without justification; and (4) the plaintiffs incurred damages").

Similarly, a claim for conspiracy to induce a breach of contract requires a defendant who is not a party to the contract who induces one of the parties to the contract to breach. See Mobil Sales & Supply Corp. v. Republic of Lithuania, No. 97 Civ. 4045, 1998 WL 196194, at *3 (S.D.N.Y. Apr. 23, 1998) (alleging defendant conspired to induce a breach of contract between the plaintiff and third party).

Here, the plaintiff's factual allegations, if true, merely amount to claims for breach of contract. The plaintiff alleges that the lease is a contract between Realities and the defendants, and that the defendants breached that contract. The defendants here are not alleged to have interfered with a

17

contract or business relationship between the plaintiff and some third party.  The defendants are also not alleged to have conspired to induce a third party to breach its contract with the plaintiff.  Therefore, the claims in counts 2 and 3 of the Amended Complaint for tortious interference with a contract, tortious interference with a business expectancy, and conspiracy to induce a breach of contract must be dismissed.

**iii.**

Count 4 of the Amended Complaint alleges abuse of process. The plaintiff alleges that the defendants have engaged in substantive misrepresentations and perjury to avoid paying rent under the lease.  Under New York law, a claim for abuse of process requires that the plaintiff establish "(1) the existence of a regularly issued process, either civil or criminal; (2) an intent to do harm without excuse or justification; and (3) the use of the process in a perverted manner to obtain a collateral objective."  A.P. Moller-Maersk A/S v. Ocean Express Miami, No. 06 Civ. 2778, 2009 WL 2523894, at *4 (S.D.N.Y. Aug. 18, 2009). "[M]isuse or perversion of regularly issued process to the accomplishment of an improper purpose" is the "essence of a claim for abuse of process."  Id.  Furthermore, courts are traditionally "reluctan[t] to entertain abuse of process

claims." Id. at *5.  The New York Court of Appeals has held
that "process" for the purposes of an abuse of process claim is
a "direction or demand that the person to whom it is directed
perform or refrain from the doing of some prescribed act."
Julian J. Studley, Inc. v. Lefrak, 362 N.E.2d 611, 613 (N.Y.
1977) (internal citation omitted).

Here, the plaintiff has failed to allege that the
defendants used regularly issued process.  The lawsuits
regarding the estate of Agnes Carvel and the lease at issue here
have been filed by the plaintiff and the Foundation, not by the
defendants here.  Therefore, the plaintiff has not adequately
alleged abuse of process and count 4 of the Amended Complaint
must be dismissed.

**iv.**

Counts 5 through 18 of the Amended Complaint allege
misprision of felony, violations of various civil rights laws,
and violations of various provisions of the United States
Constitution.

The federal statute for misprision of felony is a criminal
statute that does not create a private cause of action.  See 18
U.S.C. § 4; Williams v. Jurow, No. 05 Civ. 6949, 2008 WL
4054421, at **1, 5 (S.D.N.Y. Aug. 28, 2008).

Similarly, the plaintiff's civil rights claims pursuant to 18 U.S.C. §§ 241, 242 must be dismissed because §§ 241 and 242 do not create a private cause of action.  See Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985).

The defendants are correct that 28 U.S.C. § 1343 grants original jurisdiction over actions based on various civil rights provisions to district courts.  See 28 U.S.C. § 1343.  Section 1343 does not itself create a cause of action.  See Tekkno Labs., Inc. v. Perales, No. 90 Civ. 6124, 1991 WL 3002, at *1 (S.D.N.Y. Jan. 7, 1991) (district court has jurisdiction over case asserting claim under § 1983 pursuant to 28 U.S.C. § 1343).

The plaintiff also alleges that the defendants violated her civil rights pursuant to 42 U.S.C. §§ 1981-83 & 1985-86.  The statute of limitations in New York for claims pursuant to 42 U.S.C. §§ 1981-83 & 1985 is three years, and the statute of limitations for claims under 42 U.S.C. § 1986 is one year after the cause of action has accrued.  See Bishop v. Henry Modell & Co., No. 08 Civ. 7541, 2009 WL 3762119, at *4 (S.D.N.Y. Nov. 10, 2009) (Supreme Court of the United States and Court of Appeals for the Second Circuit have not ruled on statute of limitations for § 1982 claims, but other circuit and district courts use the § 1983 limitations period); Finkelman v. New York State Police, No. 06 Civ. 8705, 2008 WL 821833, at *3 (S.D.N.Y. Mar. 26, 2008) (statute of limitations for claims pursuant to §§ 1981, 1983 &

20

1985 is three years, statute of limitations under § 1986 is one year); Powers v. Karen, 768 F. Supp. 46, 50-51 (E.D.N.Y. 1991) (statute of limitations for § 1983 claims is the state law statute of limitations for personal injuries—three years in New York pursuant to N.Y. C.P.L.R. 214(5)).  It is not clear which of the defendants' actions the plaintiff alleges violated her civil rights, so it is not clear when the civil rights causes of actions accrued.  The plaintiff is suing for back rent allegedly due from 2000 to 2007, and the suit was filed on October 17, 2008.  The plaintiff points to no actions the defendants took to deprive her of her civil rights within the three year period prior to the commencement of the action.

However, even if the claims pursuant to 42 U.S.C. §§ 1981-82 & 1985-86 are not time-barred, they should plainly be dismissed on the merits.  Claims for violations of each of these statutes require a showing a racial discrimination.  See United States v. Nelson, 277 F.3d 164, 177 (2d Cir. 2002) (§ 1982 forbids "public and private racially discriminatory interference with property rights"); Lauture v. Int'l Bus. Machs. Corp., 216 F.3d 258, 261 (2d Cir. 2000) (§ 1981 plaintiff must show "(1) that [the plaintiff] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant[s]; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981"); Mian v. Donaldson, Lufkin &

Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993) (§ 1985

claim requires a conspiracy motivated by "some racial or perhaps

otherwise class-based, invidious discriminatory animus behind

the conspirators' action"); id. at 1088 (claim pursuant to §

1986 "must be predicated upon a valid § 1985 claim" and "an

essential element to [claims under § 1985 and 1986] is a

requirement that the alleged discrimination took place because

of the individual's race").  There are no allegations in the

Amended Complaint that the plaintiff is a member of a racial

minority, nor that she is the victim of racial discrimination.

Realities is not a natural person, and therefore lacks a race

and cannot be the victim of racial discrimination.  Therefore,

the claims under §§ 1981-82 & 1985-86 must fail.

        Similarly, in addition to being time-barred, the claim for

a violation of 42 U.S.C. § 1983 fails on the merits.  A claim

under § 1983 requires a showing that the plaintiff was deprived

of a constitutional right, and the deprivation of that right was

committed under color of state law.  See Am. Mfrs. Mut. Ins. Co.

v. Sullivan, 526 U.S. 40, 49-50 (1999).  A § 1983 claim may be

dismissed if the plaintiff does not sufficiently allege that the

defendants acted under color of state law.  See Tancredi v.

Metro. Life Ins. Co., 316 F.3d 308, 310 (2d Cir. 2003)

(affirming dismissal of § 1983 claim on the grounds that

complaint failed to allege sufficient facts to show that

defendants acted under color of state law).  Here, the
defendants are a private corporation and private citizen
employees of that corporation.  There are no allegations in the
Amended Complaint that the defendants are state actors of any
sort.  The Amended Complaint does not allege sufficient facts
that, if proven, would show that the defendants acted under
color of state law.  Therefore, the § 1983 claim must be
dismissed.

The plaintiff further alleges a claim pursuant to 42 U.S.C.
§ 1988 for attorneys' fees as the prevailing party on claims
under 42 U.S.C. §§ 1981-83.  Section 1988 only grants attorneys'
fees to a prevailing party under §§ 1981-83, it does not create
an independent cause of action.  See Vecchia v. Town of North
Hempstead, 927 F. Supp. 579, 580-81 (1996).  Because the
plaintiff's §§ 1981-83 claims have been dismissed, the plaintiff
is not a prevailing party on those claims and her § 1988 claim
must likewise be dismissed.

The Amended Complaint additionally asserts violations of
the First, Fifth, Ninth, and Fourteen Amendments of the United
States Constitution.  These claims must be dismissed because the
rights protected by those provisions are protected only against
infringement by federal or state actors.  See Hudgens v.
N.L.R.B., 424 U.S. 507, 513 (1976) (First Amendment guarantee of
free speech is protected only against abridgement by federal or

state government); Jackson v. Metro. Edison Co., 419 U.S. 345,
349 (1974) (Fourteenth Amendment does not protect against
private discriminatory conduct); Pub. Utils. Comm'n v. Pollak,
343 U.S. 451, 461 (1952) (First and Fifth Amendments apply to
federal government, not private persons); Palmieri v. Town of
Babylon, No. 06 Civ. 968, 2008 WL 3155153, at *17 (E.D.N.Y. Aug.
4, 2008) (Ninth Amendment applies only to federal actors).
Furthermore, the Ninth Amendment does not create an individual
right.  See Palmieri, 2008 WL 3155153, at *17 ("the Ninth
Amendment is considered a rule of construction that does not
give rise to individual rights") (quotation marks omitted).
Because the defendants are purely private actors, the plaintiff
has failed to state a claim for a violation of her
constitutional rights under the First, Fifth, Ninth, and
Fourteenth Amendments.

     For these reasons, counts 5 through 18 of the Amended
Complaint are dismissed.


                              v.


     Count 19 of the Amended Complaint alleges RICO violations
pursuant to 18 U.S.C. §§ 1961 & 1964, as well as violations of
18 U.S.C. §§ 1341, 1343, & 2314-15.  The RICO claims are time-
barred under the four year statute of limitations.  RICO claims

                              24

are subject to a four year statute of limitations, which beings
to run from the time the plaintiff either discovered or should
have discovered their injury.  See Kottler v. Deutsche Bank AG,
607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009).  Realities should have
discovered its injury from the time that the defendants stopped
paying the rent they allegedly owed.  The payments stopped in
2000, more than four years prior to the filing of this case in
2008.  Therefore, the plaintiff's RICO claims are time-barred.

    In addition, the RICO claims should be dismissed on the
merits.  Section 1961 merely defines terms as used in the RICO
statute, and does not create a cause of action.  See 18 U.S.C. §
1961.  Section 1964 creates a civil cause of action for private
parties injured by a violation of 18 U.S.C. § 1962, the criminal
RICO provision.  See 18 U.S.C. §§ 1962 & 1964(c).  A violation
of 18 U.S.C. § 1962 requires a showing of seven elements:  "(1)
that the defendant[s] (2) through the commission of two or more
acts (3) constituting a 'pattern' (4) of 'racketeering activity'
(5) directly or indirectly invests in, or maintains an interest
in, or participates in (6) an 'enterprise' (7) the activities of
which affect interstate or foreign commerce."  Moss v. Morgan
Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).

    The Amended Complaint insufficiently alleges the enterprise
element of a RICO claim.  The enterprise element requires some
information regarding the identity of the enterprise that

allegedly acted as a formal or informal unit.  See First Capital
Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174-75 (2d
Cir. 2004) (dismissing RICO claim when plaintiff failed to
allege hierarchy, organization, and activities of the alleged
enterprise).  Indeed, the plaintiff appears to allege that the
defendant Franchise Stores Realty Corp. was the enterprise, but
the defendant cannot be both the enterprise and the person
liable for having invested in, maintained an interest in, or
participated in that enterprise.  See, e.g., Cedric Kushner
Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) (RICO
liability under § 1962(c) requires "two distinct entities:  (1)
a 'person'; and (2) an 'enterprise' that is not simply the same
'person' referred to by a different name").  Therefore, the
plaintiff's RICO claims must be dismissed.

The plaintiff's claims pursuant to 18 U.S.C. §§ 1341 and
1343 must also be dismissed because these sections do not create
a private right of action.  See Official Publ'ns, Inc. v. Kable
News Co., 884 F.2d 664, 667 (2d Cir. 1989) (§§ 1341 and 1343 do
not create a private right of action).

Finally, the Amended Complaint also fails to state a claim
for violations of 18 U.S.C. §§ 2314-15.  Section 2314 prohibits
the transportation of stolen property and section 2315 prohibits
the sale or receipt of stolen property.  It is unclear how these
statutes would relate to the defendants' alleged failure to make

lease payments, and, in any event, these are criminal statutes and the plaintiff points to no authority that suggests there is any private right of action under these statutes.

For these reasons, count 19 of the Amended Complaint is dismissed.

**vi.**

Therefore, all claims in the Amended Complaint with the exception of the breach of contract claims for rent allegedly unpaid from October 17, 2002 until 2007 are dismissed with prejudice.  The plaintiff has not asked for leave to replead, and there is no basis on the face of the Amended Complaint to believe that the plaintiff could cure the deficiencies in a second Amended Complaint.  Moreover, this is a case in which the very same plaintiff has made allegations on behalf of another entity in another federal court seeking similar relief on behalf of another plaintiff.[3]

The plaintiff points out that the defendants rely on documents that are not part of the complaint.  The defendants

---

[3] Federal Rule of Civil Procedure 41 provides that when a plaintiff voluntarily dismisses the same claim twice, the second dismissal is to be treated as an adjudication on the merits.  See Fed. R. Civ. P. 41(a)(1)(B).  It is significant that the plaintiff brought a complaint for lease payment in the District of Delaware, but claimed that the Estate of Agnes Carvel was entitled to the lease payments and the plaintiff then dismissed that lawsuit when a court in England determined she could not represent the Estate.

should have given the plaintiff notice under Southern District of New York Local Rule 12.1 that the defendants were relying on documents outside the complaint and therefore the Court might rely on those documents and the plaintiff should come forward with evidence in opposition to those documents.  See S.D.N.Y. Local Rule 12.1.  The defendants simply ignore the rule, which is not helpful and do not respond to the plaintiff.  However, Local Rule 12.1 should not prevent granting in part the motion to dismiss.  The only documents of note, such as the decision of the New York Surrogate's Court and the Reciprocal Agreement, are documents of which the plaintiff was aware and referred to in the plaintiff's own complaint.  Moreover, the plaintiff was aware of the local rule and indeed cited it.  A pro se plaintiff who is aware of the rights that Local Rule 12.1 is designed to give notice of, and who is not prejudiced by the defendants' failure to comply with the Rule, is not entitled to prevail on the basis of the defendants' failure.  See Pieczenik v. Cambridge Antibody Tech. Group, No. 03 Civ. 6336, 2004 WL 527045, at *4 (S.D.N.Y. Mar. 16, 2004) (declining to dismiss on the grounds of failure to comply with Local Rules 12.1 and 56.2 when pro se plaintiff aware of rights protected by Rules).

**III.**

The plaintiff moves for partial summary judgment for the payment of rent and interest pursuant to Federal Rule of Civil Procedure 56.

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Grant v. Pathmark Stores, Inc., No. 06 Civ. 5755, 2009 WL 2263795, at *1 (S.D.N.Y. July 29, 2009).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the burden shifts to the nonoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Grant, 2009 WL 2263795, at *1.

In this case, the plaintiff did not originally file a separate 56.1 statement with her motion for partial summary judgment.  The defendants objected to this omission in their opposition papers, and the plaintiff then submitted a corrected motion including a proper 56.1 statement.

The plaintiff's motion for partial summary judgment alleges that she is entitled to judgment that Realities is entitled to the payment of rent for 2000 to 2007 and that it has not been paid.  There are plainly genuine issues of material fact precluding judgment in favor of the plaintiff.  The New York Surrogate's Court decision casts serious doubt on Agnes Carvel's ability to assign rental income past the date of her death.  Moreover, there are substantial questions whether Realities ever had the right to such income and whether it ever assigned such a right to the plaintiff.  Indeed the plaintiff's own allegations in the Delaware action are inconsistent with her claims in this case.  Therefore, the plaintiff is not entitled to summary judgment and her motion for partial summary judgment is denied.

**IV.**

The plaintiff also moves to compel the defendants to answer interrogatories.  This motion is denied as untimely.  Before making a discovery motion, the parties are required to meet and

confer to determine if the motion can be resolved.  <u>See</u> Fed. R.
Civ. P. 37(a)(1).  This was not done.  Moreover, the moving
party must ask for a pre-motion conference.  <u>See</u> S.D.N.Y. Local
Rule 37.2.  The plaintiff argues that this Court's individual
rules merely require a pre-motion conference for summary
judgment motions, but that is a misstatement of this Court's
rules.  This Court's rules direct the parties to follow Local
Rule 37.2.


                              **V.**


     The defendants move for sanctions against the plaintiff
pursuant to Federal Rule of Civil Procedure 11. The defendants'
primary argument for sanctions is that the plaintiff continued
to pursue this action even after being put on notice that her
claims are clearly barred by res judicata and the <u>Rooker</u>-<u>Feldman</u>
doctrine.  However, this case is not barred by res judicata or
<u>Rooker</u>-<u>Feldman</u>.  The present case is sufficiently different from
the Surrogate's action that this Court cannot conclude that
sanctions are appropriate.  It is troubling that the allegations
in this case are different from the allegations in the case the
plaintiff filed in Delaware, but even that action does contain
allegations regarding Realities.


                              32

Furthermore, the requirements for imposing sanctions are "stringent" and a court may be especially reluctant to do so against a pro se litigant.  See Sloan v. Truong, No. 07 Civ. 8537, 2009 WL 2143630, at *1 (S.D.N.Y. July 9, 2009) ("court may consider the special circumstances of pro se litigants" when considering a Rule 11 motion for sanctions) (quotation marks omitted).  This Court cannot conclude that the alleged abuse in this case is sufficient to exercise its discretion to impose sanctions, particularly against a pro se plaintiff.

## CONCLUSION

The defendants' motion to dismiss is **granted in part** and **denied in part**. All counts in the Amended Complaint are **dismissed with prejudice** except for the breach of contract claims from October 17, 2002 through 2007. The plaintiff's motions for partial summary judgment and to compel a response to interrogatories are **denied**. The defendants' motion for sanctions is **denied**.

The Clerk is directed to close Docket Nos. 10, 11, 13, 17 & 25.

**SO ORDERED.**

Dated:     New York, New York
           December 1, 2009

John G. Koeltl
United States District Judge

34